UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No.: 6:04-cv-1441-GAP-DAB

ROBERT POTCHEN,

Plaintiff,

vs.

DAVID W. MCLEOD and SULYN V. MCLEOD, and the CITY OF WINTER SPRINGS, FLORIDA,

Defendants.
_____________________________________/

**DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW**

Defendants McLeods and City of Winter Springs move to dismiss Plaintiffs' Second Amended Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.

**STANDARD FOR MOTIONS TO DISMISS**

For purposes of a motion to dismiss, the "factual allegations in the complaint must be taken as true." *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993). Dismissal is appropriate "where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint." *Id.*

"Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist." *Wagner v. Daewoo Heavy Industries Am. Corp.*, 289 F. 3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314

F. 3d 541 (11th Cir. 2002) (en banc). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F. 3d 1182, 1188 (11th Cir. 2002) (internal quotation marks and citation omitted); *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F. 2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and *unwarranted deductions of fact are not admitted as true"); Robinson v. Jewish Ctr. Towers, Inc.*, 993 F. Supp. 1475, 1476 (M.D.Fla.1998) ("[T]he court will not accept, without more, conclusory allegations or legal conclusions masquerading as factual conclusions."); *Cummings v. Palm Beach County*, 642 F. Supp. 248, 249-50 (S.D.Fla.1986) (finding vague and conclusory complaint failed to state a factual basis for claims of race and age discrimination required to give defendant notice necessary to prepare defense). To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims. *Jackson v. BellSouth Telecommunications*, 372 F. 3d 1250 (11th Cir. 2004).

**SUMMARY OF FACTS**

Plaintiffs Potchen, Acha, Jones, and Defendant McLeods all own lots in Dunmar Estates subdivision in Winter Springs, Florida. *Second Amended Complaint* ¶¶ 1, 3, 5, 6. Dunmar Circle is a dirt road through Dunmar Estates and each abutting property owner owns to the center line of Dunmar Circle. *Second Amended Complaint* ¶ 13. The Homeowner's Association maintains Dunmar Circle. *Second Amended Complaint* ¶15. The Covenants and Restrictions refer to an ingress-egress and public utility easement through Dunmar Circle.

*Second Amended Complaint* ¶13. The Defendants, McLeods, entered into an easement agreement with the Defendant, City of Winter Springs, to install a water line through that portion of Dunmar Circle owned by the McLeods. *Second Amended Complaint* ¶ 19. The water line was installed by the City. *Second Amended Complaint* ¶ 24.

Plaintiffs object to the installation of the water line and have filed their Second Amended Complaint alleging two counts of trespass, a count for unlawful taking, a count for injunctive relief, a count for declaratory relief, and a count for punitive damages.

## MEMORANDUM OF LAW

### I. PLAINTIFFS LACK STANDING TO ALLEGE THE INJURIES SUFFERED BY THE HOMEOWNERS' ASSOCIATION, THE ARCHITECTURAL CONTROL COMMITTEE, OR OTHER PROPERTY OWNERS

To satisfy standing requirements, a plaintiff must demonstrate he has "suffered 'injury in fact,' that the injury is 'fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Loggerhead Turtle v. County Council of Volusia County*, 148 F. 3d 12311247 (11th Cir. 1998). The Second Amended Complaint is replete with allegations relating to injury to the Homeowners' Association ("HOA"), the Architectural Control Committee ("ACC"), and to other property owners of Dunmar Estates. However, each individual Plaintiff fails to allege he has been specifically harmed due to the actions of the Defendants.

The injuries alleged throughout the Second Amended Complaint include: increased traffic of City employees overburdens the dirt road, increased liability due to the presence of third parties, monetary damages due to wear and tear on the automatic gates, and prevention

of future improvements on the easement. *Second Amended Complaint*, ¶ 25, ¶ 26, ¶ 38, and ¶ 69. These alleged injuries are all injuries to the HOA or the ACC in general, not to the individual Plaintiffs.

The HOA is responsible for the maintenance of the roads and the gates at the entrances; Potchen, McLeod, and Acha are not responsible for this maintenance, nor have they alleged they are individually responsible for maintenance of the road or the gates. *Second Amended Complaint*, ¶ 15. Any cause of action alleging injuries to the rights of the HOA lies with the HOA and not the individual members.

Plaintiffs assert that they represent "other like situated property owners." *Second Amended Complaint* ¶ 9. Plaintiff Potchen asserts the water line "will be invasive to Potchen, and the Association members in general, and result in an overburden of the easement, as well as providing open access to the City for maintenance, thus interfering with the Association's 'right to exclude' others from the use of its property interests. The installation of the eight-inch waterline serves a public purpose for which the Association should not be burdened by serving the entire City of Winter Springs without compensation." *Second Amended Complaint* ¶ 20. Plaintiffs further allege that the water line presents irreparable harm "to the gated community in that it resulted in the increase of City traffic utilizing Dunmar Circle." *Second Amended Complaint* ¶ 25. In addition, Plaintiffs allege that the open access to all City vehicles "has resulted in an unwarranted and unconstitutional invasion of the Association's privacy rights." *Second Amended Complaint* ¶ 27. Plaintiffs also allege that "Plaintiff [it is not specified which one] and members of the Association are in doubt as to the rights of the

Association and the ACC under the Covenants and Restrictions . . . The ACC believes that it has the responsibility and the duty to minimize overburden of the easement and protect the integrity, privacy and aesthetics of Dunmar Estates." *Second Amended Complaint* ¶ 29.

None of these allegations include allegations that each Plaintiff has been individually harmed. Neither the HOA nor the ACC are parties to this case and Plaintiffs cannot represent the interests of the HOA or the ACC.

### A. **The Plaintiffs Cannot Sue On Behalf of the Homeowners' Association**

Section 720.303, Florida Statutes, addresses the issue of standing in litigation matters relating to Homeowners' Associations:

> [T]he association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all members concerning matters of common interest to the members, including, but not limited to, the common areas; roof or structural components of a building, or other improvements for which the association is responsible; mechanical, electrical, or plumbing elements serving an improvement or building for which the association is responsible; representations of the developer pertaining to any existing or proposed commonly used facility; and protesting ad valorem taxes on commonly used facilities. The association may defend actions in eminent domain or bring inverse condemnation actions...**A member does not have authority to act for the association by virtue of being a member**.

§720.303, Fla. Stat. (2004) (emphasis added).

The injuries described in the Second Amended Complaint are injuries to the Homeowners' Association. Only the Homeowners' Association has the right to sue for the injuries alleged in the Second Amended Complaint, and the Plaintiffs have no right to assert that they represent the Homeowners' Association.

No special injury is specific to the Plaintiffs in this instant case. Based on the four corners of the Second Amended Complaint, Plaintiffs fail to allege any legally recognizable basis for standing to sue the Defendants in this case, and Plaintiffs= claims should be dismissed.

**B. Plaintiffs do not have third party standing.**

Plaintiffs assert they are representing a group (other like situated property owners, the HOA and the ACC). If they are attempting to assert third party standing, they do not meet the requirements to do so.

The United States Supreme Court held that third party standing required that: (1) the plaintiff suffer concrete redressable injuries; (2) the plaintiff has close relation with the third party; and (3) the third party does not have the ability to protect his or her own interests. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629 (1991). The Plaintiffs in the instant case do ~~not allege any of these elements. Fur~~ther, Plaintiffs fail to show that they each have suffered "concrete redressable injuries." Plaintiffs, who only have an ingress-egress easement over Dunmar Circle, do not allege that their ability to traverse over Dunmar Circle has been lost or impaired by the existence of the underground water line. The only injuries they allege are injuries to the HOA, the ACC, or all property owners. Plaintiffs do not allege they have a "close relationship" with the other property owners. Finally, Plaintiffs do not allege that the HOA, the ACC, or the other property owners have no ability to protect their own interests. Therefore, Plaintiffs have no right to allege injuries of third parties.

Plaintiffs, therefore, have no standing to sue for any of the injuries they allege in the Second Amended Complaint and the complaint should be dismissed in its entirety.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR TRESPASS

In Counts I and III of the Amended Complaint, the Plaintiffs allege two separate trespass counts. Both counts should be dismissed for failure to state a claim.

### A. Plaintiffs Failed to Comply With Presuit Notice Requirements

Counts I and III are tort claims and must meet the requirements of section 768.28(6), Florida Statutes. Plaintiffs tort claims are precluded because a written claim was not first presented to the City of Cocoa pursuant to section 768.28(6)(a), Florida Statutes (2003), and Plaintiffs failed to allege compliance.

The notice requirement set forth in section 768.28(6) is a condition precedent to maintaining a tort action against a governmental entity. *McSwain v. Dussia, II,* 499 So. 2d 868, 869 (Fla. 1st DCA 1987). Strict compliance with section 768.28(6)(a) is required. *Maynard v. Fla. Dept. of Corrections*, 864 So. 2d 1232, 1234 (Fla. 1st DCA 2004). Plaintiffs did not comply with pre-suit notice requirements and did not plead compliance with the pre-suit notice requirement.

The Second Amended Complaint alleges that "[t]he ACC placed the City and McLeod on notice of its position and advised that the installation of the waterline without legal authority would amount to trespass (Exhibit "F")." *Second Amended Complaint* ¶ 23. However, this statement does not constitute pleading compliance with section 768.28(a).

Further, the ACC is not a party to this case. Plaintiffs have not themselves given the City pre-suit notice of a claim.

## B. Count I Contains Impermissible Conclusory Allegations

Count I contains conclusory allegations and unwarranted deductions of facts in attempting to allege a claim for trespass. Paragraph 35 of the Second Amended Complaint states that "Defendants' actions in allowing unrestricted access by the City onto the private roadway of Dunmar Circle impermissibly extended Defendants' easement rights to a third party." Plaintiffs fail to state what actions have allowed unrestricted access by the City; fail to describe what constitutes unrestricted access; and fail to state what third party has obtained easement rights due to Defendants' actions.

Paragraph 36 alleges that "Defendants' extension of the easements to serve non-dominant land constitutes an overburden of the servient estates." Plaintiffs completely fail to set forth what rights they have that have been overburdened by the water line easement located under McLeod's property. In fact, Plaintiffs have only alleged that the ACC "has the responsibility and the duty to minimize overburden of the easement." *Second Amended Complaint*, ¶ 29.

Paragraphs 38 and 39 of the Second Amended Complaint allege that the City's access "has caused Plaintiffs and other servient property owners to suffer increased liability to those trespassers using the private road as a thoroughfare" and allege that Plaintiffs and other servient property owners have suffered "monetary damages related to the increased traffic and wear on the automatic gates located at the entrances of Dunmar Estates." Plaintiffs'

conclusory statements are insufficient to show an unlawful trespass. Plaintiffs fail to name who these "other servient property owners" are; fail to state how they have all suffered increased liability; fail to state what type of interest or responsibility they, as individuals, have relating to the liability for trespassers or liability for wear and tear on the automatic gates; and fail to show how Plaintiffs, who have nothing but a right of ingress and egress over Dunmar Circle, have been overburdened by the water line easement.

### C. **<u>Count III Contains Impermissible Conclusory Allegations</u>**

Count III also alleges a trespass, but couches it in terms of a trespass to real property as opposed to an overburden of a servient estate. The same pleading deficiencies exist as in Count I. Plaintiffs allegations are conclusory statements. Plaintiffs allege the City travels beyond the granted easement, but fails to state how the City travels beyond the granted easement. Plaintiffs allege the City "intends to enter the privately held property of Dunmar Estates and uses the property as a thoroughfare or short cut." What Plaintiffs believe the City "intends" to do is not a fact; it is Plaintiffs' irrational beliefs. Further, Plaintiffs allege the water line itself constitutes a continuing trespass to land, but Plaintiffs fail to show how they have any ownership interest in the land through which the water line exists. Finally, Plaintiffs make the conclusory statement that Defendants acted with "wanton, actual malice, deliberation, gross negligence and in utter disregard for the Plaintiff and members of the Association and therefore Plaintiffs are entitled to punitive damages. *Second Amended Complaint* ¶ 59. Plaintiffs fail to allege specific facts supporting this allegation. Further,

the members of the Homeowner's Association are not parties to this law suit and Plaintiffs have no right to claim damages on their behalf.

### D. Plaintiffs Do Not Have the Necessary Possessory Interest to State a Cause of Action for Trespass

The McLeods own in fee simple the property under which the water line was installed. Plaintiffs share the right of ingress and egress over Dunmar Circle, but do not have the right to own or possess it and therefore cannot state a cause of action for trespass either in Count I or Count III of the Second Amended Complaint. In order to obtain a recovery for a trespass to real property, Plaintiffs must have an ownership or possessory interest in the property; an ingress-egress easement is insufficient. *Winselman v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997).

In *Winselman*, the plaintiff owned a home in a subdivision and had an ingress-egress easement to the subdivision's boat basin. Defendants, owners of the subdivision, executed a lease with a third party in order to erect a chain link fence around the subdivision's boat basin, creating a pen for ill marine animals. *Id.* at 1327. The plaintiff sued for trespass alleging that the lease permitting the fence around the boat basin interfered with his right to use and enjoy the boat basin. *Id.* Defendants moved to dismiss for failure to state a cause of action, which was granted by the trial court and affirmed on appeal.

The court defined civil trespass to real property as "an injury to or use of the land of another by one having no right or authority." *Id.* The court stated that to obtain recovery for a trespass to real property "it is clear that the aggrieved party must have had an

ownership or possessory interest in the property at the time of the trespass." *Id.; see also Vincent v. Hines*, 84 So. 2d 614, 616 (Fla. 1920) ("the plaintiff must show a right to maintain an action for trespass to land by showing title to or possession of the land.").

Where it is clear from the allegations in the complaint that the plaintiff "had only an easement or a right to the use of the subject property, the trial court properly determined that a trespass action could not lie." *Winselman* at 1327.

In the instant case, the Plaintiffs do not allege they own or have a possessory right to the land in question. They allege nothing more than an ingress-egress easement over Dunmar Circle (which is, of course, also subject to utility easements). According to *Winselman*, the Plaintiffs simply do not have the possessory right necessary to sue for trespass.

Further, it appears that the only damages that were asserted by the Plaintiffs in the Second Amended Complaint include wear and tear on the automatic gates, rendering the security gates useless due to the "improper dispersal of security code," and the water line itself jeopardizing any future improvements on the easement. *See* ¶ 25, ¶ 26, ¶38, and ¶ 69 *Second Amended Complaint* . These indirect damages due to the alleged trespass of the City employees and the water line are all related to the responsibilities of the Homeowners' Association, and not the Plaintiffs.

**E. <u>The Water Line Does Not Interfere With Plaintiffs' Easement</u>**

As a matter of law, an underground utility does not interfere with the use of the surface. In *Costin v. Branch*, 373 So. 2d 370 (Fla. 1st DCA 1979), lot owners were granted

an easement to Awalk upon or to use for boating, bathing, and non-commercial fishing, and otherwise to enjoy the beaches or waterfront. *Id.* at 371. The Costins were constructing a cottage on their property and desired to install a septic tank and related facilities to service the cottage. The septic tank would extend underground onto the easement area located on their property. The plaintiff, a beneficiary of the easement, sought to enjoin construction of the underground septic tank and drain field because it would obstruct or interfere with the use of the easement. Testimony was elicited that the installation of the septic tank, drain field, water pipes and well would involve digging holes and ditches in the ground causing interference with the natural contours of the earth and sand dunes, and destruction of the beach vegetation. The trial court found that the proposed project would interfere with the surface of the ground and have a detrimental effect upon the easement area itself, causing a diminution, however slight, of the rights of the easement users. The trial court noted that "[a]t the very least, there would be an interference with the easement area during the period required for excavation and installation of the facilities as well as during any service or repair of them." *Id.* at 372 (J. Booth, dissenting).

On appeal, the court reversed the trial court's injunction, finding that it was "clear the intent of the easement was to grant rights such as those of a riparian owner: view, ingress and egress, bathing, boating, fishing and enjoyment of the waterfront. These are the rights specifically expressed in the easement." *Id.* at 371. The decision contains important language applicable to the present case:

> The appellee's **easement to enjoy the surface use of the land does not prevent the appellants, as owners of the underlying fee, from placing utilities underground in such a way that surface use of the land is not obstructed in any way**. The rights of an owner of an easement and the rights of the owner of the servient land are not absolute, but are limited so that each party may reasonably enjoy the property . . . We find that the septic tank, drain field and water lines would not fall within the definition of 'structure' as used in the easement.
>
> **None of the uses described in the easement even remotely refer to the subsurface of the land involved**. An underground tank, placed at a proper distance underground or an underground pipe, would not disturb surface use by the grantees for the purposes provided in the easement. Since we find that the underground construction would not interfere with a reasonable and fair enjoyment of the easement, the case is reversed and remanded with instructions that the trial court dissolve the injunction.

*Id.* at 371 (emphasis added).

Applying *Costin* to the present case, the underground water line does not prevent the lot owners from enjoying their ingress-egress easement over Dunmar Circle.

Similarly, in *Kimlow, Inc. v. Seminole Landing Assoc., Inc.*, 586 So. 2d 1290 (Fla. 4th DCA 1991), various property owners wanted to develop their land and install sewer lines. Some deeds reserved an easement for ingress and egress and for underground "utility lines" along a road shown on the plat. An owner who objected to installation of sewer lines argued that a sewer line was not the same as a utility line. *Id.* at 1291. The court disagreed, finding that "[u]tilities as a matter of common understanding includes sewer systems." *Id.* Therefore, the "unambiguous language of the easement allows for the installation of sewers along the easement of these parcels." *Id.*

The *Kimlow* court also considered other deeds which reserved an easement and right-of-way over a private road shown on the plat and also included a utility easement. The court found that installation of sewer lines would not unreasonably expand the easement beyond what was contemplated. *Id.* at 1292. The court determined that the reservations in deeds "all contemplated the installation of utilities along Seminole Boulevard . . . Therefore, it cannot be said that the installation of sewer lines along Seminole Boulevard was beyond what was contemplated at the time of the creation of the easements." *Id.* The court also addressed the concern that disruption of the easement will occur if more customers add to the sewer line:

> [N]o greater disruption of the easement will be made as a result of adding additional customers to the sewer line. When complete, the line itself will be underground and will not injure appellee's property. Therefore, the trial court erred in determining that appellants were not entitled to install sewer lines along Seminole Boulevard. The deeds to the various parcels make clear that the installation of sewers was contemplated at the time the easements were created.
>
> Appellee . . . argue[s] that allowing all of these sewer connections will increase the burden on their lands. However, that is an issue beyond the interpretation of the easement. The easement contemplates that a sewer line can be installed. The fact that it may serve more customers than appellee thinks it should is not material to the right to install it granted under the easement . . . [The law does not] prohibit the use of an easement because the servient tenant believes the dominant tenant's plan for his property is not to the servient tenant's liking.

*Id.*

The court granted the request to install and maintain sewer lines along Seminole Boulevard. *Id.* at 1293.

In the present case, the Covenants and Restrictions contemplate the installation of utilities through Dunmar Circle. Potable water lines are no less "utilities" than sewer lines. *See* ' 177.031, Fla. Stat. (definition of "public utility" includes water service). No disruption of the ingress-egress easement will be made by the existence of the water line. No trespass has been suffered by the Plaintiffs.

## III. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR AN UNLAWFUL TAKING

Plaintiffs allegations in Count II are conclusory and insufficient to state a cause of action for an unlawful taking under the Fifth Amendment to the United States Constitution. The Second Amended Complaint fails to allege how a taking has occurred. Count II alleges "an unlawful taking of private property by a governmental entity without Constitutionally mandated compensation." *Second Amended Complaint*, ¶ 46. This count is allegedly based on the fact that, due to the water line easement, the City has access to the private roadways of Dunmar Estates and City employees "use the roadways of Dunmar Estates as a short cut from the Tuskawilla area to Lake Avenue." *Second Amended Complaint* ¶ 44.. Even if it is true that City employees drive through the subdivision, this action does not rise to the level of a permanent, physical invasion of property necessary to constitute an unlawful taking, nor do Plaintiffs allege this action constitutes a permanent, physical invasion of their property. Plaintiffs have not alleged that the City has physically invaded property they own.

Count II alleges that the Defendants caused a loss of a "primary property right: the right to exclude others." *Second Amended Complaint*, ¶ 48. Plaintiffs do not state how

Defendants have deprived Plaintiffs of the right to exclude others. Further, Plaintiffs' mere right of ingress and egress across Dunmar Circle does not grant them the right to exclude others from the underlying land and Plaintiffs do not so allege. The plain language of the Covenants and Restrictions provides that the ingress and egress easement includes an easement for public utilities. Any rights Plaintiffs have across Dunmar Circle are expressly subject to public utility easements, such as the City's water line. Plaintiffs cannot possibly have a right to exclude others (especially public utitilities) since they merely have the right to use the road for ingress and egress and the Covenants plainly contemplate public utilities through Dunmar Circle.

The Second Amended Complaint fails to specify how the Defendants have taken the limited rights Plaintiffs have in the property in question. Plaintiffs, who have only a right of ingress and egress, have not alleged that their ingress and egress has been impaired or eliminated by the existence of the underground water line.

The existence of a property interest is a pure question of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F. 2d 1171, 1174 (11th Cir. 1993). Property interests "are not created by the Constitution. Rather, they are created and their dimensions are defined by *existing* rules or understandings that stem from an independent source such as state law." *Id.* at 1175 (emphasis in original). "Whether state law has created a property interest is a legal question for the court to decide." *Marine One, Inc. v. Manatee County*, 877 F. 2d 892, 894 (11th Cir.1989).

Therefore, to demonstrate a property interest in the land in question, Plaintiffs must show existing Florida law vesting them with a right to exclude others from the subsurface of the land in question. Florida law states to the contrary. As already cited, there is law in Florida holding that an ingress-egress easement does not constitute an ownership or possessory interest in the land. *Winselman v. Reynolds*, 690 So. 2d 1325, 1327 (Fla. 3d DCA 1997). Further, Florida law provides that an easement to enjoy the surface of the land, such as for ingress and egress, "does not prevent the . . . owners of the underlying fee from placing utilities underground." *Costin v. Branch*, 373 So. 2d 370, 371 (Fla. 1st DCA 1979).

The Covenants and Restrictions make reference to the ingress-egress and public utility easement through Dunmar Circle; therefore, it has always been contemplated that the ingress-egress easement and utility easements co-exist through Dunmar Circle. The Covenants make several references to public utility easements contemplated in Dunmar Estates. ¶ 10, Covenants; ¶ 19 Covenants Addendum 1 (Five foot strips along the side and rear lot lines are reserved for utility service. "Upon request by appropriate utility authority, the respective property owner or owners shall grant to said utility authority, the right to utilize said five(5) foot strip for the sole purpose of providing utility service to lots situated in Dunmar Estates.").

Further, the Covenants recognize public utility easements through Dunmar Circle. ¶ 10, Covenants ("Dunmar Circle is for the private use of the property owners and the public utility company serving the said lots").

An easement for a water line, and the maintenance of that water line is a reasonable result from the authority granted in the Homeowners' Association's Covenants and Restrictions.

The City has not taken Plaintiffs' right to exclude others from the land in question because Plaintiffs do not have the right to exclude others. Plaintiffs fail to state an action for an unlawful taking.

## IV. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR INJUNCTIVE RELIEF

Count IV, which requests injunctive relief, fails to state any basis justifying injunctive relief. Plaintiffs allege none of the elements necessary for an injunction.

A party requesting injunctive relief must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) its own injury outweighs the injury to the nonmovant; and (4) the injunction would not disserve the public interest." *Haitian Refugee Ctr., Inc. v. Baker*, 949 F. 2d 1109, 1110 (11th Cir. 1991). An injury is irreparable "only if it cannot be undone through monetary remedies." *Cate v. Oldham*, 707 F. 2d 1176, 1189 (11th Cir. 1983).

> Any claim for a traditional injunction must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits. There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed.R.Civ.P. 12(b)(6) (failure to state a claim). *See, e.g., Paisey v. Vitale*, 807 F.2d 889, 892 (11th Cir.1986).

*Klay v. United Healthgroup, Inc.*, 376 F. 3d 1092, 1097 (11th Cir. 2004).

If Plaintiffs cannot show their rights have been violated, they are not entitled to injunctive relief. *Id.*

First, Plaintiffs have not articulated any basis for injunctive relief. Second, even if there is some basis for injunctive relief set forth in the Second Amended Complaint, Plaintiffs have not alleged, and cannot show, a likelihood of success on the merits of their trespass claims or takings claims, as previously addressed. Third, Plaintiffs have not alleged they have suffered irreparable damage or that money damages could not compensate for any injuries they have suffered. In fact, Counts I and II request monetary damages. Specifically, to enjoin a trespass on land, the Plaintiffs must legally establish their title to the land, and the trespass must cause "irreparable damage not susceptible of complete pecuniary compensation." *Altantic Coast Line R. Co. v. Feagin*, 105 So. 141 (Fla. 1925). In the instant case, the Plaintiffs do not have a possessory right, and only have an ingress-egress easement shared with all the residents of Dunmar Estates. No title has been established and they have not shown irreparable damages not susceptible to monetary compensation.

Finally, Plaintiffs have not alleged, and cannot show, that an injunction would serve the public interest or would not result in inordinate hardship on the Defendants. In this case, the water line project is completed and the loop has been connected. An injunction requiring the City of Winter Springs to rip out that small section of the pipe that travels under Dunmar Circle would disconnect the loop and eliminate potable water and fire protection service to the various residents served by the Southern Water Main Interconnect. Plaintiffs' stated harms caused by the installation of the water line are: excessive use of roadways in Dunmar

Estates by City employees; wear on the gate; inability to install landscaping; and inability to exclude others. On the other hand, the harm to the McLeods and the majority of others who were in favor of the City water line in losing potential potable water service and fire protection services greatly exceeds the exaggerated and irrational harms asserted by Plaintiffs. Further, the harm and immense expense to the City and its residents in tearing out just this small portion of the pipe and attempting to re-route the pipe is great compared to the slight inconvenience Plaintiffs describe. An injunction would be highly inequitable in the instant case and would not serve the public interest because the public is best served by having access to potable water and improved fire fighting services. The public is not served when the City is forced to un-do a finished project.

Plaintiffs have failed to state a cause of action for injunctive relief.

## V. PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION FOR DECLARATORY RELIEF

Count V purports to allege a cause of action for declaratory relief on the basis that the parties "dispute the necessity of approval by the Homeowners' Association and/or the ACC, thereby creating a bona fide dispute with regard to the legality of the easement granted to the City, as well as the legal rights and recourse of Plaintiffs and other homeowners in Dunmar Estates in response to Defendant McLeod's failure to obtain Association and ACC approval for the easement and structures created." *Second Amended Complaint*, ¶ 76. Plaintiffs allege that "Plaintiff and members of the Association are in doubt as to the rights of the Association and the ACC under the Covenants and Restrictions . . . The ACC believes

that it has the responsibility and the duty to minimize overburden of the easement and protect the integrity, privacy and aesthetics of Dunmar Estates." *Second Amended Complaint* ¶ 29.

A district court can grant declaratory relief "only if there is 'a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests.'" *Sullivan v. Division of Elections*, 718 F.2d 363, 364 (11th Cir. 1983).

Plaintiffs fail to state how they have been particularly injured or how their particular rights are in doubt. All they allege is the rights of the HOA and the ACC. Further, Plaintiffs fail to state what cause of action they base their request for declaratory relief. Plaintiffs do not state what law was violated relating to their request for declaratory relief. This court should not waste its time deciding whether the HOA or ACC should have approved of the water line before it was installed if there is no proper underlying cause of action.

## VI. PLAINTIFFS HAVE NOT STATED A CLAIM FOR PUNITIVE DAMAGES

Count VI of the Second Amended Complaint is a demand for punitive damages and simply alleges the following conclusory statement: "Defendants acted with wanton, actual malice, deliberation, gross negligence and in utter disregard for the Plaintiff and members of the Association and therefore Plaintiffs are entitled to punitive damages." In addition, paragraphs 59 and 78 assert that "[t]he Defendants acted with wanton, actual malice, deliberation, gross negligence and in utter disregard for the Plaintiff and members of the Association and therefore Plaintiffs are entitled to punitive damages."

Section 768.72(2), Florida Statutes provides that a defendant may be held liable for punitive damages if there is clear and convincing evidence that the defendant was "personally

guilty of intentional misconduct or gross negligence." Plaintiffs have not alleged that each defendant was personally guilty of intentional misconduct or gross negligence, as those concepts are defined in section 768.72(2), nor have Plaintiffs alleged any facts showing any intentional misconduct or gross negligence on the part of each Defendant. Plaintiffs have failed to state any factual basis to support punitive damages. Further, Plaintiffs have no legal basis for claiming punitive damages on behalf of members of the Association.

WHEREFORE, in light of the foregoing, the Defendants seek an Order granting Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint.

Debra S. Babb-Nutcher

**ANTHONY A. GARGANESE, ESQUIRE**
City Attorney, City of Winter Springs
Florida Bar No.: 0988294
**DEBRA S. BABB-NUTCHER, ESQUIRE**
Florida Bar No.: 0996580
**BROWN, GARGANESE, WEISS & D'AGRESTA, P.A.**
225 East Robinson Street, Suite 660
P. O. Box 2873
Orlando, Florida 32802-2873
Telephone: (407) 425-9566
Facsimile: (407) 425-9596

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided via United States mail delivery to Michael D. Jones, Esquire, 301 W. State Road 434, Suite 317, Winter Springs, FL32708 and Damon A. Chase, Esquire, Chase Law Offices, P.A., 1009 East Highway 436, Altamonte Springs, FL 32701 on this 11th day of October, 2004.

**DEBRA S. BABB-NUTCHER, ESQUIRE**